```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
TRUSTEES OF PAVERS AND ROAD            :
BUILDERS DISTRICT COUNCIL WELFARE,     :   **MEMORANDUM**
PENSION, ANNUITY, AND                  :   **DECISION AND ORDER**
APPRENTICESHIP, AND SKILL              :
IMPROVEMENT AND SAFETY FUNDS,          :   19-cv-4322 (BMC)
                                       :
                                       :
              Plaintiff,               :
                                       :
       - against -                     :
                                       :
INTERCOUNTY PAVING ASSOCIATES OF       :
NEW YORK, LLC,                         :
                                       :
              Defendant.               :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This is an action brought by a union benefits fund for unpaid contributions against a participating employer. Before me are plaintiff's motion for a default judgment and defendant's cross-motion to vacate the Clerk's entry of default against it and to accept its untimely answer. There is no reason to delay entry of judgment in this case, and the motions are disposed of accordingly.

## BACKGROUND

Defendant is a party to a collective bargaining agreement ("CBA") with plaintiff's originator, the Highway, Road and Street Construction Laborers Local Union 1010. As is standard, the CBA required defendant to make monthly contributions to plaintiff as part of its obligations to union employees, and to file written reports showing on a monthly basis the

number of union employees it had working and their hours. As is also standard, the CBA corresponds to certain trust agreements to which plaintiff and defendant are parties.

The complaint alleges that defendant missed its monthly contribution for June 2016 and for the months of January 2019 through May 2019. In addition, defendant failed to submit employee reports for the same months in 2019 that would have allowed a precise calculation of its contributions. When that happens, under the trust agreements, plaintiff has the right to apply its policy for making a substitute calculation based on projections derived from prior reports.

Plaintiff's complaint alleges claims under section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. § 1145, and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to collect delinquent employer contributions. Defendant failed to respond to the summons and complaint despite valid service. Accordingly, the Clerk of Court noted its default upon the record, and thereafter, plaintiff moved for entry of a default judgment, containing detailed proof of its damage calculation.

Defendant made no response for almost six weeks, and when it finally responded, it did not oppose the motion for default judgment; it simply filed an answer as if it were timely responding. I entered an Order requiring defendant to show cause as to why the answer should not be stricken as untimely and in light of the entry of default. Defendant responded to that Order by moving to vacate the entry of default and for acceptance of its untimely answer.

# DISCUSSION

## I.     Defendant's Motion to Vacate Entry of Default

Rule 55(c) of the Federal Rules of Civil Procedure provides that a court may set aside an entry of default for "good cause."  As this language suggests, "[t]he dispositions of motions for entries of defaults ... are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  The scope of this discretion, however, is limited by the Second Circuit's "oft-stated preference for resolving disputes on the merits." Id.  Nevertheless, the Second Circuit has recognized that default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary.  Under such circumstances those procedural rules play a constructive role in maintaining the orderly and efficient administration of justice." Id. at 96.

To maintain the balance between the two competing interests, the Second Circuit has instructed district courts to consider, along with other relevant factors, "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Id.  These factors are applied less leniently to a defendant after a default judgment has been entered. Id.

Defendant's motion to vacate its default is denied for two principal reasons.  First, no adequate excuse for the default has been offered.  All I have been given is an attorney's affidavit stating that because defendant has been sued three other times by other pension funds for delinquent contributions, some unidentified person at defendant's office overlooked this case.  Nothing has been offered as to the procedures defendant has in place to prevent this, let alone identifying why those procedures failed.

Defendant's excuse is also unpersuasive because, just as it ignored the summons and complaint, it similarly ignored plaintiff's motion for a default judgment, despite being mailed a copy. Defendant only responded to the complaint, finally, by filing an untimely answer without leave of court well after entry of default against it and well after the time to respond to plaintiff's motion for a default judgment had passed. Defendant's failure to respond to either the summons and complaint or the motion for a default judgment compels the conclusion that its default was willful or in reckless disregard of its legal obligations.

My finding of willfulness is buttressed by the second, and more important, reason that I am denying the motion to vacate, namely, that defendant has failed to articulate a meritorious defense. The only potential defense to which the attorney's affidavit alludes is that the CBA under which plaintiff is claiming delinquent contributions may have expired. However, as defendant acknowledges, the CBA continued by its express terms from year to year, unless terminated by timely notice. Defendant has not even suggested it gave notice, let alone annexing a copy of such notice, so its defense fails as a matter of law. It would make little sense for me to vacate the default only to be in the same place on a motion for summary judgment months from now, a delay that would only work to defendant's benefit in continuing to avoid its obligations.

Finally, I reject defendant's conclusory assertion that plaintiff will suffer no prejudice if its default is vacated. Defendant's motion to vacate itself demonstrates the prejudice that plaintiff will suffer if the default is vacated, noting the following:

> Until recently, IPA was a large construction industry employer in the New York/New Jersey paving industry with roughly 125 permanent employees, a number which grew to 450 employees during the summer and fall paving seasons. In 2018 and 2019, due to a number of economic factors and decisions, IPA has diminished drastically. The company now has about five total permanent employees.

This description, plus the fact that there are three other lawsuits pending against defendant for unpaid plan contributions, creates a pretty clear picture of looming if not present insolvency. Unless defendant voluntarily seeks bankruptcy protection or defendant's creditors force it into bankruptcy to equalize distributions among them, which they have no obligation to do, there is a substantial likelihood that the speediest creditor will be the creditor most likely to be paid. Delay may furnish a tactical point that could allow defendant to negotiate more favorable settlements with its creditors or to play them off against one another. However, that is not a position that I am going to further because, as Judge Sand once noted, "the federal courts should not become a haven for the dilatory debtor." Marine Midland Bank v. Smith, 482 F. Supp. 1279, 1291 (S.D.N.Y. 1979) (internal quotation and citation omitted).

Finally, defendant makes a passing reference to disputing plaintiff's damage calculation. Of course, as shown below, even in a default posture, a defendant has the right to dispute damages. I will therefore address this dispute as part of the following discussion on plaintiff's motion for a default judgment, for a dispute over damages is no reason to vacate entry of default.

## II. Plaintiff's Motion for a Default Judgment

In light of defendant's default in this case, all of the well-pleaded allegations in plaintiff's complaint pertaining to liability are deemed true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992). However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Rule 55(b)(2) provides that when granting default judgment, a court may conduct a hearing if it is necessary to "determine the amount of damages" or to "establish the truth of any allegation by evidence." The Second Circuit has held that it is not

5

necessary to conduct a hearing if a district court has "ensured that there was a basis for the damages specified in the default judgment," such as by relying on detailed affidavits and documentary evidence. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (internal quotation marks and citations omitted).

Of course, the allegations in the complaint must be adequate to show the defendant's liability. See Greyhound Exhibitgroup, Inc., 973 F.2d at 158. Here, as shown in the Background of the case set forth above, they are. Plaintiff has amply alleged defendant's contractual obligation to make contributions to the benefit plans and defendant's default in the failure to make payments. Indeed, as discussed in the preceding section, defendant has no substantial defense to liability for plaintiff's claim.

As to damages, plaintiff has submitted proof by affidavit and documentary evidence that it is entitled to the amounts it claims. Plaintiff has taken the last 12-month period for which defendant actually submitted reports – January 2018 through December 2018 – and used those reports to project amounts that would be due in 2019. This is precisely the methodology for which plaintiff's policy pursuant to the trust agreements provides.

Plaintiff has submitted charts calculating its damages and all of the underlying documents to support that calculation. The total amount of damages is $149,902.30, arrived at as follows:

| Category | Amount |
| --- | --- |
| Estimated Contributions | $88,935.10 |
| Union Assessments | $5,146.00 |

| | |
|---|---|
| Interest on the Delinquent Contributions | $3,075.65 |
| Liquidated Damages | $8,893.51 |
| Attorneys' Fees and Costs | $4,831.60 |
| Late Payment Interest | $39,020.44 |
| **Total** | **$149,902.30** |

Plaintiff has submitted an additional, more detailed chart showing how it arrived at each of these elements of damages. And it has specifically tied out each element of damages to the underlying agreements at the most detailed level. In addition, I have reviewed plaintiff's claimed amount in attorneys' fees and costs, and they are quite moderate and reasonable.

Defendant has no substantial response to these calculations. It confusingly argues that plaintiff "fails to state whether or not the 2019 assessments align with the 2015 contract rate or whether the assessments are based upon the Union's 2019 CBA rates with other industry employers." It has not told me why plaintiff had any obligation to answer those questions, and I see none in the documents. Defendant has done nothing to refute plaintiff's *prima facie* case of damages.

**CONCLUSION**

Defendant's motion to vacate the entry of default [19] is denied and its late answer [18] is

stricken. Plaintiff's motion for a default judgment [11] is granted. The Clerk is directed to enter judgment in favor of plaintiff and against defendant in the amount of $149,902.30.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
      January 2, 2020